**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**x RHODE ISLAND AVENUE NORTHWEST**
**UNIT #xxx**
**WASHINGTON, D.C.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR x RHODE ISLAND AVENUE NORTHWEST, UNIT #xxx, WASHINGTON, D.C. This location is described as a condominium unit located within a multi-story red brick building. The building is located on the northern side of Rhode Island Avenue Northwest, south of U Street Northwest, and immediately west of North Capitol Street, in Washington, D.C. The front door of the building is made of glass with brown trim and the building is marked "x" in black on a white background to the left of the front door. Unit #xxx is on the third floor and is the second door on the right as one walks up the stairs. The unit is labeled "xxx" in the upper center of the door in dark orange numbers. The door is tan/beige with dark orange trim and has a brass colored doorknob and lock on the right side. Unit #xxx is to the right and Unit #xxx is to the left of the target residence.

Your affiant, Joshua C. Green, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF). I am currently assigned to the Washington, D.C. area High Intensity Drug Trafficking Area (HIDTA) Task Force and I have been assigned to the HIDTA Task Force since becoming a Special Agent with the ATF in July of 2000. Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service for over five years, the last three of which were in the Washington, D.C. area. Since becoming a Special Agent with the ATF, I have taken part in numerous narcotics and firearms related investigations involving armed drug traffickers, armed gangs, felons in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking. In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2. I have participated in the execution of over one hundred and fifty search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage. In addition, these warrants have also led to the recovery of items such as

shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

    A) It is common for narcotic traffickers to secrete illegal drugs in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

    B) It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

    C) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the premises and/or vehicles.

    D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as

        property derived from the distribution of narcotics, and such items are often kept in their residence.

      E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences and/or vehicles for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

4. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government.  This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

5. For approximately the last eleven months, your affiant and other law enforcement officers have been working with a Confidential Informant, referred to in this affidavit as CI-1. This Confidential Informant is a cooperating defendant who has pled guilty to a violation of federal law in U.S. District Court and is working with the government in order to apply for a reduced sentence.  During this time period, CI-1 has provided reliable information regarding firearms and narcotics trafficking related criminal activity to law enforcement. This information, through further investigation, has been verified accurate by your affiant and/or other law enforcement officers and has led to the positive identification of illegal drug dealers and the recovery of one firearm.  No information yet provided by CI-1 has been proven purposely false or misleading.

6. In March, 2008, I received information from CI-1 regarding a subject known to the CI as a trafficker in illegal drugs in the Washington, D.C. metropolitan area.  CI-1 stated that a person the CI knew as "Kevin" was currently involved in selling hydroponically grown marijuana.  "Kevin" was reportedly living at x Rhode Island Avenue Northwest, Apartment xxx, Washington, D.C. and driving an Audi station wagon.  In February, 2008, the CI saw at least two types of marijuana in the residence.  In addition, the CI knew that "Kevin" was in possession of a pistol sometime during the summer of 2007 while he was residing at another location in Washington, D.C.

7. Research was conducted by your affiant and I determined that the individual known to CI-1 as "Kevin" was likely Kevin Amos HOSTEN.  In May, 2008, I obtained an arrest booking photograph of HOSTEN and showed the photograph to CI-1 who confirmed that HOSTEN was indeed the subject the CI had described.

8. I conducted a criminal record check and found that Kevin Amos HOSTEN had a criminal history to include an arrest in Washington, D.C. on September 1, 1990, in which HOSTEN was charged with Distribution of Cocaine. HOSTEN appears to have been convicted of this offense and sentenced on December 13, 1990, to a term of probation. HOSTEN was also arrested in Maryland on November 2, 2003, and charged and convicted of Possession of Marijuana and Possession of Drug Paraphernalia.

9. After conducting an investigation and speaking with various third parties, I have learned that the apartment described by CI-1 as being occupied by "Kevin" is a condominium unit. I have since determined that the owner of unit #xxx, an individual identified as Julian Cameron, does not currently reside there.

10. Since March, 2008, I have repeatedly conducted surveillance at x Rhode Island Avenue Northwest, Washington, D.C. Parked in front of the location I have observed an Audi station wagon bearing District of Columbia registration tag xxxxx. This vehicle is registered to Kevin Amos HOSTEN of xxxx Iris Street Northwest, Washington, D.C. This residence is believed to be occupied by family member(s), possibly HOSTEN's parents. I have observed this vehicle parked in front of the location on at least ten prior occasions in the last six months, the most recent time being September 22, 2008. When I have seen this vehicle, it has been parked in various different locations, indicating that it is being used and driven. Lastly, during the day of September 19, 2008, I personally observed in front of the building an individual I thought was HOSTEN and who matched his physical description.

11. On September 19, 2008, after receiving permission to enter the building from an officer of the condominium association representing x Rhode Island Avenue Northwest, Washington, D.C., I went to the location with Manassas Park Police Officer Mario Lugo and his canine named Brutus. Officer Lugo is a Task Force Officer currently deputized to work with the ATF in various jurisdictions to include Washington, D.C. Brutus, his canine unit, has been trained as a drug detection dog. Brutus has been working for over one year as a detection dog trained to locate illegal drugs and has been certified by the Virginia Police Canine Association. He has had practical experience in multiple jurisdictions and has located or indicated the presence of illegal drugs of numerous occasions, resulting in drug seizures and arrests. On September 19, 2008, Officer Lugo and Brutus went to the third floor of x Rhode Island Avenue Northwest, Washington, D.C., and conducted drug detection at the three residential units located on that floor. Brutus sniffed at a small crack at the bottom of the door of each unit on that floor and alerted/indicated at unit #xxx. According to Officer Lugo, the alert/indication that Brutus gave would indicate the presence of illegal drugs inside that unit.

12. In summary, based on the information contained herein, I believe that Kevin Amos HOSTEN is utilizing x **Rhode Island Avenue Northwest, Unit #xxx, Washington, D.C.,** as a base to conduct and facilitate an illegal drug trafficking operation involving marijuana. Furthermore, based on the aforementioned investigation, your affiant's

training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).  Your affiant believes that probable cause exists that within x **Rhode Island Avenue Northwest, Unit #xxx, Washington, D.C.,** there is presently concealed illegal drugs, drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency and/or other proceeds of narcotic sales.  These items are listed more completely on a separate sheet included with this application and labeled "Attachment A".  I therefore respectfully request a search warrant be issued for the premises and locked boxes within the premises x **Rhode Island Avenue Northwest, Unit #xxx, Washington, D.C.,** authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this _____ day of September, 2008.

_____
United States Magistrate Judge
District of Columbia